**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 10-CR-0134-CVE** |
| | ) | **[Civil Case No. 14-CV-0232-CVE-PJC]** |
| **JEFFREY SHAUN BAGBY,** | ) | |
| **a/k/a Jeffrey Sjawn Bagby,** | ) | |
| **Jeffrey Shawn Bagby,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is defendant's motion to vacate, set aside or correct sentence (Dkt. # 88).[1] Defendant argues that he received ineffective assistance of trial and appellate counsel, and he asks the Court to vacate his conviction and sentence. Under 28 U.S.C. § 2255, "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

## I

On August 31, 2010, a magistrate judge signed a complaint charging defendant with possession of 50 grams or more of cocaine base (crack) with intent to distribute in violation of 21 U.S.C. 841(a)(1) and (b)(1)(A)(iii) and being a felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1). Dkt. # 1. Defendant was arrested and made his initial appearance on September

---

[1] Defendant has also filed a motion to compel discovery (Dkt. # 106), which the Court will consider if it finds that defendant is entitled to an evidentiary hearing.

2, 2010, and Julia O'Connell, the Federal Public Defender for the Northern District of Oklahoma was appointed to represent defendant. Dkt. # 5. On September 6, 2010, O'Connell filed a motion to withdraw when she learned that a conflict of interest prevented her from representing defendant, and the motion to withdraw was granted. Dkt. ## 8, 9. James Fatigante was appointed as substitute counsel. Dkt. # 9. On September 7, 2010, a grand jury returned an indictment (Dkt. # 11) containing the same charges alleged in the complaint. A detention hearing was held and the magistrate judge ordered that defendant be detained pending trial. Dkt. ## 16, 17. Fatigante filed a motion to withdraw from his representation of defendant, stating that the attorney/client relationship was irretrievably broken. Dkt. # 20, at 2. The motion to withdraw also states that defendant asked Fatigante to file the motion to withdraw. Id. The Court granted Fatigante's motion to withdraw and appointed Beverly Atteberry to represent defendant.

A pretrial conference was held on November 5, 2010, and Atteberry advised the Court that she had requested discovery concerning an ongoing police corruption investigation of officers in the Tulsa Police Department (TPD). Dkt. # 66, at 3. Counsel for the government, Janet Reincke, had contacted the prosecutor in charge of the police corruption investigation and was awaiting a response to her inquiry about the police officers involved in defendant's arrest. Id. at 4-5. At the conclusion of the pretrial conference, the Court held an ex parte hearing with only defendant and Atteberry present. Defendant expressed dissatisfaction with the representation provided by Atteberry and Fatigante, and he claimed that both attorneys should have challenged the magistrate judge's ruling of pretrial detention. Dkt. # 67, at 1-4. Defendant stated the he wanted to represent himself. The Court asked defendant questions to establish that he understood the charges against him. Id. at 5-7. Atteberry advised the Court that Reincke would be filing an enhancement information raising the

statutory mandatory minimum as to count one from 10 years to life imprisonment.  Id. at 7.
Defendant acknowledged that he had been offered two plea agreements by the government, but he
characterized any attempt at plea negotiations as "interfering with [his] defense."  Id. at 8.
Defendant complained that neither Fatigante nor Atteberry had filed a motion to dismiss as he
requested, but Atteberry stated that there was no legitimate basis to file a motion to dismiss.  Id. at
9-10.  Defendant also alleged that Atteberry refused to investigate or prepare a defense; Atteberry
stated that she had received a list of 10 potential witnesses from Fatigante.  Defendant told her that
there was only one witness that she needed to interview, and she was also contacted by another
witness on the list.  Id. at 11.  However, defendant had repeatedly sent Atteberry on "wild goose
chases" for purported evidence that did not actually exist.  Id.  Defendant asked the Court to appoint
Kevin Adams to represent him, and defendant was advised that he could not pick any attorney he
wanted to be appointed by the Court.  Id. at 16-17.  At the conclusion of the ex parte hearing, the
Court determined that defendant had not unequivocally expressed an intention to represent himself
at trial and Atteberry would remain as his counsel of record.  Id. at 18-19.  On December 21, 2010,
the government filed an enhancement information (Dkt. # 34) pursuant to 21 U.S.C. § 851, and the
mandatory minimum sentence as to count one was life imprisonment.

The jury trial began on December 22, 2010, and defendant announced that he would
represent himself at trial.  Dkt. # 68, at 3.  Atteberry confirmed that defendant had stated that he
intended to terminate Atteberry's representation and that he wanted to represent himself at trial.  Id.
at 4.  The Court held an extended colloquy with defendant and Atteberry about their discussions
concerning the punishment defendant faced if convicted, and Atteberry stated that she had advised
defendant about the impact of the enhancement information filed by the government.  Id.  Upon

questioning by the Court, defendant stated that he understood the nature of the charges against him and the punishment he faced, and he claimed that he had to represent himself because Atteberry was racist. Id. at 5-8. The Court advised defendant that he was bound by the Federal Rules of Evidence and the Federal Rules of Criminal Procedure. Id. at 9. Defendant claimed that he had no choice but to represent himself, because Atteberry was working with the prosecutor and had failed to prepare a defense. Id. at 12-13. The Court found that defendant knowingly and voluntarily waived his right to counsel and permitted him to represent himself at trial. Id. at 14. The Court appointed Atteberry to serve as standby counsel during trial. Id. The government asked the Court to prevent defendant from referencing the police corruption investigation, and the government's motion was granted. Id. at 15. The Court asked defendant if he wished to stipulate to the fact of his prior convictions as to count two, and the Court presented defendant with a redacted indictment that did not list his prior convictions. Id. at 16. Defendant refused to consult with his standby counsel and he directed the Court to show the jury the unredacted indictment. Id. at 17. After jury selection, the parties made their opening statements and defendant many numerous improper and irrelevant statements to the jury. Id. at 35-41.

TPD Officer William Mackenzie testified that he had been working undercover and had received a tip that defendant was selling cocaine from a residence located at 1643 North Columbia Place in Tulsa, Oklahoma. Id. at 46. Mackenzie was conducting surveillance at the residence and saw defendant enter a vehicle. Id. Mackenzie followed the vehicle and observed multiple traffic violations, and he asked TPD Officer Josh Dupler to conduct a traffic stop of the vehicle. Id. at 48. Mackenzie returned to the residence and knocked on the door, and a person identified as Mike Braggs opened the door. Id. Braggs consented to a search of the residence, but Mackenzie did not

search defendant's bedroom because defendant was not present to consent to a search. Id. at 50. Braggs consented to a search of the garage and he provided Mackenzie a key to the garage. Mackenzie observed a plastic bag containing rocks consistent with the appearance of cocaine base. Id. at 51. Mackenzie contacted Dupler and directed him to detain defendant at the traffic stop. Id. at 53. TPD Officer Tim Wilson stayed in the garage to prevent anyone from tampering with evidence, and Mackenzie went to interview defendant when Dupler and defendant arrived at the residence. Id. Mackenzie also contacted TPD Corporal Michael Helton for the preparation of a search warrant for defendant's bedroom. Id. at 56-57. Mackenzie read defendant his Miranda rights and defendant agreed to speak to Mackenzie. Id. Defendant told Mackenzie to take the drugs and he would stop selling drugs, and he said that there was "about nine ounces of hard in the garage and there's about $9,000 in the bedroom in the safe." Id. at 59. Defendant wanted to work out a deal with Mackenzie and he told Mackenzie that "it's all mine," but Mackenzie told defendant that he could not make a deal. Id. at 60. Defendant declined to consent to a search of his bedroom, and they waited until Helton arrived with a warrant to search defendant's bedroom. Id. at 61. Police recovered a total of $17,000 in cash from the residence. Id. at 63.

Defendant cross-examined Mackenzie about the source of the tip that led Mackenzie to defendant's residence, and Mackenzie admitted that he was the only police officer who spoke to the confidential informant. Id. at 64-71. Mackenzie testified that he observed defendant commit traffic violations and he asked Dupler to conduct the traffic stop, but Dupler would not have been the officer who actually observed the traffic violations. Id. at 72-74. Mackenzie testified that he arrested defendant for possession of cocaine base, because a substantial amount of cocaine base was found in the residence and defendant admitted that he possessed it. Id. at 77. Mackenzie stated that

no drugs were found in defendant's bedroom but police did recover a large amount of money from the room. Id. at 79. Maczenzie went back to the residence when a second search warrant was executed, and he went to the residence a third time to interview Braggs. Id. at 84.

TPD Officer David Brice was Mackenzie's partner on April 16, 2010, and he was also conducting surveillance of 1643 North Columbia Place on that date. Id. at 99. He was present when Mackenzie received a call from a confidential informant, but Brice did not talk to the confidential informant himself. Id. Brice observed a male and a female get into a car and drive away from the residence, and Brice identified the male passenger as defendant. Id. at 101. Mackenzie and Brice followed defendant's vehicle, and Brice observed that defendant failed to stop at a stop sign. Id. Mackenzie and Brice contacted another police officer to maintain surveillance of defendant's vehicle, and they returned to 1643 North Columbia Place. Id. at 102. They made contact with the resident of the home, Braggs, and Braggs permitted them to look around the home for illegal drugs. Id. at 102-03. Mackenzie searched the home while Brice stayed in the living room with Braggs, and Brice also took photographs of property seized from the residence. Id. at 103-04. Brice returned to the home a second time when a search warrant was executed, and papers establishing defendant's residency in the home and cash were seized. Id. at 104-05. Jared Lieser, a forensic scientist for TPD, testified that he examined the substances seized from the residence, and the substances tested positive for cocaine base with a net weight of 342.88 grams. Id. at 138-48.

TPD Officer Wilson testified that on April 16, 2010 he received a call to provide assistance at 1643 North Columbia Place, and Officers Mackenzie, Brice, and Dupler were in the residence when he arrived. Id. at 153. Mackenzie informed Wilson that drugs had been found in the garage, and Mackenzie showed Wilson a plastic bag in a clothes dryer in the garage that appeared to contain

cocaine base. Id. at 154. Wilson participated in the search of the residence and he found $900 in cash in the pocket of shirt found in defendant's bedroom. Id. at 155. Wilson was in the living room of the residence while Mackenzie was interviewing defendant, and Wilson heard defendant state that he did not need scales to cut an "eight ball" of crack cocaine. Id. at 155-56. TPD Corporal Helton testified that he prepared an affidavit for a search warrant that would allow the police to search all of the rooms of 1643 North Columbia Place on April 16, 2010. Id. at 164-65. Helton appeared before a judge and the judge signed the search warrant, and Helton took the search warrant to the residence. Id. at 165. TPD Officer Matt Frazier testified that a second search warrant was obtained for the residence in July 2010, and police recovered ammunition from a safe, a digital scale, a documents establishing that defendant resided at 1643 North Columbia Place. Id. at 186-87.

On the second day of trial, Special Agent Thomas Harris of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) described the ammunition seized from the residence and he testified that the ammunition crossed state lines before it was seized by TPD. Dkt. # 69, at 9-10. Robert Yerton, a forensic expert, testified that he had compared defendant's fingerprints with the fingerprints in defendant's penitentiary pack, and the fingerprints came from the same individual. Id. at 14-24. The government rested its case after Yerton's testimony and defendant made a motion for judgment of acquittal. Id. at 30. The Court denied defendant's motion, and defendant called Braggs as a witness. Id. at 31. Braggs stated that on April 16, 2010 the police did not have a search warrant for the residence, but he consented to the search and provided police officers a key to open the garage. Id. at 33-35. However, police refrained from searching the defendant's bedroom until they obtained a search warrant later that day. Id. at 37. Braggs testified that police returned with a second search warrant for the entire residence on July 22, 2010, and the ammunition found by police

belonged to him and not to the defendant. Id. at 38-39. Defendant's sister, Kimberly Harvey, testified that, on April 16, 2010, defendant lived at her house located on East Xyler Street. Id. at 58. After calling another witness, defendant stated that he did not have any more witnesses, and the Court advised defendant that he had a right to testify on his own behalf. Id. at 68. Defendant stated that he understood that he had the right to testify and standby counsel acknowledged that she had discussed the matter with defendant. Id. at 68-69. Defendant clearly stated that he did not want to testify and he was "ready to get this over with." Id. at 69. Defendant renewed his motion for judgment of acquittal and the motion was denied. Id. After the Court instructed the jury, plaintiff and defendant made their closing arguments, and the jury retired to deliberate. The jury found defendant guilty of count one of the indictment and found that he possessed 342.88 grams of cocaine base, but the jury found defendant not guilty of count two. Dkt. # 41. The Court acquitted defendant of count two. Dkt. # 48.

Defendant continued to represent himself at the sentencing stage of the case and filed a pro se objection (Dkt. # 44) to the presentence investigation report (PSR). A sentencing hearing was set for March 29, 2011 and defendant appeared at the hearing with standby counsel. Dkt. # 49. Defendant claimed that he did not receive a copy of the revised PSR until the day before the sentencing hearing, and the Court engaged in a colloquy with defendant about the process of preparing the PSR. Id. at 4-12. Despite defendant's frequent interruptions, the Court conducted the sentencing hearing and advised defendant that a judgment and commitment would be entered. Id. at 48-50. On March 29, 2011, the Court entered a judgment and commitment, but the Court vacated the judgment and commitment based on defendant's allegations that he did not timely receive the revised PSR and addendum. Dkt. # 52. The Court held a second sentencing hearing on April 13,

2011, and the Court ruled on defendant's objections to the PSR. Dkt. # 71, at 9-11. The Court sentenced defendant to life imprisonment, because the government had filed an enhancement information (Dkt. # 34) stating that defendant had previously been convicted of two or more felony drug offenses. Atteberry advised the Court that she would assist the defendant with filing a notice of appeal and any preliminary appellate documents, and she would ask the Tenth Circuit Court of Appeals to appoint new counsel to represent defendant on appeal. Id. at 30-31. The Court entered a judgment and commitment on April 13, 2011, and Atteberry filed a notice of appeal (Dkt. # 57) on behalf of defendant the next day.

On October 17, 2012, the Tenth Circuit entered a decision denying defendant's appeal. Dkt. # 79. The Tenth Circuit found that there was sufficient evidence presented to the jury to establish that defendant possessed the cocaine base found in the residence, and it rejected defendant's argument that it was plain error for the Court to read the jury an unredacted indictment. Defendant challenged whether the Court complied with the proper procedures under 21 U.S.C. § 851, but the Tenth Circuit found that any error was harmless. Defendant did not file a petition for a writ of certiorari with the United States Supreme Court and, assuming no other intervening circumstances, it appeared that defendant's conviction became final 90 days after the Tenth Circuit issued its decision. Based on the information contained on the docket sheet, defendant's conviction became final on January 15, 2013.

On May 12, 2014, the Court Clerk received a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Dkt. # 88) from defendant. The Court ordered defendant to show cause why his motion should not be dismissed as untimely, because his § 2255 motion was filed more than one year after January 15, 2013. Dkt. # 97. Defendant failed to respond to the order to show cause

and the Court dismissed defendant's § 2255 motion as untimely.  Dkt. # 100.  Defendant filed a motion to alter or amend judgment (Dkt. # 103), and he argued that he had filed a petition for rehearing after the Tenth Circuit denied his appeal.  He provided evidence that the Tenth Circuit denied his request for rehearing on February 5, 2013, and his conviction became final 90 days after his time to file a petition for writ of certiorari expired after his request for rehearing was denied.  Defendant's conviction actually became final on May 6, 2013, and his § 2255 motion would be timely if it was filed no later than May 6, 2014.  Defendant's § 2255 motion was received by the Court Clerk on May 12, 2014, but the motion includes a sworn statement that defendant placed the motion in the prison legal mail system on May 5, 2014.  In light of the new information provided by defendant, the Court found that his § 2255 motion was timely.  Dkt. # 104.  The Court permitted defendant to file a brief in support of his § 2255 motion, and defendant filed a lengthy supplemental brief (Dkt. # 105) with evidence attached.  The Court ordered the government to respond to defendant's § 2255 motion, and the government filed a response (Dkt. # 109) with affidavits of Atteberry and Reincke attached, as well as correspondence between defendant and Atteberry.  Defendant was permitted to file a reply, but no reply was filed.  The § 2255 motion is at issue.

## II.

Defendant claims that he received ineffective assistance of trial and appellate counsel, and he alleges the following claims:

I. Whether trial counsel provided constitutionally ineffective assistance when he/she failed to object to the [g]overnment's pervasive misconduct, including its deliberate fraud upon the Court relevant to the [TPD] corruption investigation.

II.  Whether trial counsel provided constitutionally ineffective assistance when she failed to file a motion to suppress the statements purportedly made by the defendant to Officer Mackenzie.

III. Whether trial counsel provided constitutionally ineffective assistance when she failed to adequately investigate and prepare for trial.

IV. Whether trial counsel provided constitutionally ineffective assistance when she failed to object to the [d]istrict [c]ourt's conclusion that the defendant had knowingly and voluntarily waived his right to counsel.

V. Whether trial counsel provided constitutionally ineffective assistance when he failed to request a hearing on previous counsel's motion to withdraw based upon an undisclosed conflict of interest.

VI. Whether appellate counsel provided constitutionally ineffective assistance when he failed to raise the issues enumerated above on direct appeal.[2]

VII. Whether appellate counsel provided constitutionally ineffective assistance when he failed to argue that the facts (prior convictions) used to increase the defendant's mandatory minimum sentence to life imprisonment were elements of the offense that should have been contained in the indictment, submitted to the jury, and proved beyond a reasonable doubt.

Dkt. # 105, at 3

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88.

---

[2]     Ground six in defendant's § 2255 motion states that appellate counsel should have raised "the issues enumerated above on direct appeal." Dkt. # 105, at 3. However, defendant states in his discussion of appellate counsel's performance that "[i]t is hard to find much fault with [appellate counsel's] performance" and "most of the issues raised in this pleading could not have been raised on direct appeal." Id. at 47. Defendant further states that "there is one issue that [appellate counsel] should have raised on appeal, and that is the self-representation issue." Id. The Court's discussion of defendant's claim concerning the performance of appellate counsel will focus on the self-representation issue, but the Court will also consider whether grounds one through five of defendant's § 2255 motion assert a meritorious claim that should have been raised on direct appeal.

There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

**A.**

Defendant argues that counsel for the government committed misconduct before and during his trial, and he argues that his trial counsel failed to object to the pervasive misconduct related to a corruption investigation of certain officers of the TPD. Dkt. # 105, at 16-30. Defendant's claim is based on a wide range of alleged misconduct. He complains of general misconduct by the TPD, and he alleges that his constitutional rights were violated during a search of the residence located on North Columbia Place. Dkt. # 105, at 23. For the purpose of ground one of defendant's motion,

the Court will focus on defendant's arguments concerning alleged police corruption and the production of exculpatory evidence related to the police corruption investigation. Suppression issues will be considered as part of the ruling on ground two of defendant's § 2255 motion.

Ground one of defendant's motion concerns an investigation into the illegal acts of certain police officers formerly employed by the TPD and, in a prior case, this Court discussed the nature of the investigation:

> On July 19, 2010, a grand jury returned a sealed indictment charging Jeff Henderson and a co-defendant, William Yelton, with drug and firearms offenses, conspiracy to commit and suborn perjury, perjury, witness tampering, and conspiracy to deprive individuals of their civil rights. United States v. Jeff M. Henderson and William A. Yelton, 10-CR-117-BDB (N.D. Okla), Dkt. # 2. On July 20, 2010, Henderson made his initial appearance and the indictment was unsealed. A superseding indictment (Dkt. # 111) with additional criminal charges against Henderson was filed on September 24, 2010. The case went to trial and Henderson was convicted of eight charges. Seven of the convictions were for perjury based on Henderson's false testimony at a suppression hearing in United States v. Ronald Crawford, 09-CR-26-CVE (N.D. Okla.).[3] [ATF Agent Brandon J. McFadden] was separately charged with drug crimes, possession of a firearm in furtherance of a drug trafficking offense, and money laundering and, on May 6, 2010, he pled guilty to a drug conspiracy charge. United States v. Brandon J. McFadden, 10-CR-058-BDB (N.D. Okla.).
>
> News of the Tulsa police corruption scandal became public at least as early as May 2010, and Henderson's involvement was alleged in unsealed court documents, newspaper articles, and judicial decisions during the summer of 2010. See United States v. Williams, 2011 WL 489771 (N.D. Okla. Feb 7, 2011) (describing police corruption investigation and providing citations to newspaper articles dating back to May 2010); United States v. Crawford, 2010 WL 5071039 (N.D. Okla. Dec. 7, 2010) (ruling on motion for discovery in support of a § 2255 motion filed on June 22, 2010 concerning Henderson's alleged misconduct); United States v. Henderson, 2010 WL 4065467 (N.D. Okla. Oct. 15, 2010) (ruling on a motion to withdraw by one of Henderson's attorneys in his criminal case).

United States v. Hernandez-Espolina, 2016 WL 70025 (N.D. Okla. Jan. 6, 2016). Atteberry was aware of the police corruption investigation and she sought discovery from Reincke about the

---

[3]     In addition, Henderson was convicted of depriving Carah Bartel and William Kinard of their constitutional rights in violation of 18 U.S.C. § 242. Henderson, 10-CR-117-BDB (N.D. Okla), Dkt. # 300, at 44.

possible investigation of Dupler. Dkt. # 109-1, at 2-6. Reincke responded that she had no information that Dupler was the subject of a corruption investigation, but Reincke agreed to reach out to the special prosecutor for potentially exculpatory evidence related to any of the police officers involved in the investigation and arrest of defendant. Id. at 7. On November 12, 2010, the special prosecutor advised a representative of the United States Department of Justice that none of the police officers in this case was under investigation. Dkt. # 109-2, at 3. Reincke sent a letter to Atteberry advising her that Reincke had no Brady/Giglio evidence as to any of the police officers involved in this case. Dkt. # 109-3, at 2.

Defendant argues that Mackenzie was a subject of the police corruption investigation, and he alleges that the government failed to produce Brady/Giglio evidence related to Mackenzie. Dkt. # 105, at 24. He claims that two criminal cases against other defendants were dismissed because of misconduct committed by Mackenzie, and he argues that Reincke intentionally or recklessly withheld this information from the Court. Id. at 24-26, 28-29. Defendant also argues that the government failed to produce all of the discovery materials in its possession, and he asks the Court to review the entire discovery file in camera to ensure that all of the documents were produced to defendant. Id. at 29.

Defendant has not shown that the government intentionally failed to produce evidence in its possession that would have constituted Brady/Giglio evidence. Atteberry requested information about the possible investigation of any officers in this case, and she states that such a request had resulted in the dismissal of charges against another client. Dkt. # 109-1, at 2. Reincke followed standard protocol in place to determine if any of the police officers in the case were the subject of the police corruption investigation, and Reincke was advised that none of the officers was under

investigation. Dkt. # 109-2, at 3. Defendant claims that Mackenzie was involved in two criminal cases in which charges were later dismissed to police corruption. Dkt. # 105, at 24. However, the cases cited by defendant involved Henderson and McFadden, and criminal charges were not dismissed because of Mackenzie's conduct. United States v. Demarco Deon Williams, 08-CR-021-CVE, Dkt. # 84 (N.D. Okla); United States v. Ivan A. Silva-Arzeta, 06-CR-120-TCK, Dkt. # 133 (N.D. Okla.). Defendant speculates that Mackenzie may have been the subject of the corruption investigation, but there is no evidence suggesting that Mackenzie committed misconduct or that counsel for the government failed to turn over Brady/Giglio evidence. The Court finds that Atteberry acted appropriately by making a formal request for Brady/Giglio evidence about the police officers involved in this case, and Atteberry's performance was not deficient in regard to seeking any Brady/Giglio evidence in the government's possession. Ground one of defendant's § 2255 motion is denied.

**B.**

Defendant argues in ground two that his attorneys were ineffective for failing to file a motion to suppress evidence before trial. Dkt. # 105, at 30-34. He claims that he was detained an unreasonable amount of time after Dupler initiated a traffic stop and no citation for a traffic violation was issued. Id. at 31-32. Defendant also argues that his attorneys should have filed a motion to suppress statements he allegedly made to Mackenzie, because this was the only evidence tending to show that defendant possessed the cocaine base found in the garage.[4] Id. at 34. The government

---

[4]     Defendant could also be arguing in grounds one and two that a motion to suppress should have been filed on the basis that Mackenzie did not actually receive a tip from a confidential informant. Dkt. # 105, at 20-22, 31. Defendant raises a similar argument in ground three in the context of defense counsel's allegedly deficient pretrial investigation, and the Court will consider the argument in ruling on ground three.

responds that defense counsel acted reasonably by declining to file a motion to suppress evidence or statements, because police had sufficient evidence to arrest defendant after a drug dog alerted to his vehicle and defendant knowingly waived his <u>Miranda</u> rights. Dkt. # 109, at 26-28.

The first issue raised in ground two of defendant's § 2255 motion concerns the length of his detention after Dupler initiated a traffic stop of defendant's vehicle. Defendant claims that he was detained for an unreasonable amount of time without probable cause or an arrest warrant, and the investigative detention became an unlawful custodial arrest. Dkt. # 105, at 31. Defendant has provided a copy of Dupler's report describing the traffic stop and drug dog sniff of defendant's vehicle on April 16, 2010. <u>Id.</u> at 66. Dupler states that Mackenzie and Brice were conducting of surveillance on defendant's residence, and Mackenzie and Brice followed defendant's vehicle as it left the residence. <u>Id.</u> Mackenzie observed defendant commit several traffic violations, and he asked Dupler to pick up surveillance of the vehicle. <u>Id.</u> Dupler personally observed defendant commit two traffic violations after he began following defendant's vehicle, and he initiated a traffic stop. <u>Id.</u> Dupler spoke to Bagby and asked him to exit the vehicle, and Dupler began to write a traffic citation for failing to stop at a stop sign. <u>Id.</u> In a "reasonable amount of time," a canine unit arrived and conducted a dog sniff, and the drug dog indicated that illegal drugs were present in the vehicle. <u>Id.</u> Officers searched the vehicle and found marijuana residue on the floorboards of the vehicle. <u>Id.</u>

Investigative detentions, which are Fourth Amendment seizures of limited scope and duration, are lawful if they are supported by a reasonable suspicion that the detained individual is engaged in criminal activity. <u>Novitsky v. City of Aurora</u>, 491 F.3d 1244, 1253 (10th Cir. 2007). The investigative detention must be "justified at its inception and reasonably limited in scope."

United States v. Rice, 483 F.3d 1079, 1082 (10th Cir. 2007). The Tenth Circuit has made a clear distinction between the level of suspicion needed to initiate an arrest and an investigative detention:

> While an investigative detention is a seizure within the meaning of the Fourth Amendment, it need not be supported by probable cause. An investigative detention is justified where specific and articulable facts and rational inferences from those facts give rise to reasonable suspicion that a person has committed or is committing a crime.

United States v. Walraven, 892 F.2d 972, 975 (10th Cir. 1989) (quoting United States v. Espinosa, 782 F.2d 888, 890 (10th Cir. 1986)). An investigative detention may be "transformed" into an arrest under the Fourth Amendment under certain circumstances. United States v. Hamilton, 587 F.3d 1199, 1215 (10th Cir. 2009). "[I]f police officers' actions exceed what is reasonably necessary under the totality of the circumstances, the stop may only be justified by probable cause or consent." United States v. Melendez-Garcia, 28 F.3d 1046, 1051 (10th Cir. 1994). This may occur due to the use of handcuffs, firearms, or other police techniques inconsistent with the limited scope of an investigation detention, or the detention may become so lengthy that the investigation detention escalates into a de facto arrest. United States v. White, 584 F.3d 935, 952-53 (10th Cir. 2009). "An officer has probable cause to arrest if, under the totality of the circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." United States v. Rodriguez-Rodriguez, 550 F.3d 1223, 1227 (10th Cir. 2008) (quoting United States v. Munoz-Nava, 524 F.3d 1137, 1144 (10th Cir. 2008)).

Construing defendant's arguments broadly, he could be making two separate arguments concerning the length of the traffic stop. Defendant argues that the traffic stop was unreasonably lengthy, and he claims that the traffic stop changed from an investigative detention into a custodial

arrest. Dkt. # 105, at 31. Defendant makes a separate argument that he was arrested without a warrant or probable cause when officers failed to issue him a citation for a traffic violation or possession of marijuana after marijuana residue was discovered in his vehicle. Id. at 32. The Court has reviewed the record and finds that both arguments are meritless. Dupler did not testify at trial and his report does not state how long the traffic stop lasted, and there is no evidence as to the actual length of the traffic stop. Id. at 66. The only evidence that the Court has is Dupler's statement in his report that he was in the process of preparing a traffic citation when the canine unit arrived and that the drug dog arrived within a reasonable time after the traffic stop was initiated. Id. Defendant has made no specific allegations concerning the length of the traffic stop, and there is no evidence that would support an inference that the traffic stop exceeded the permissible scope of an investigative detention. As to defendant's second argument, Dupler was not obligated to issue defendant a citation for a traffic violation or possession of marijuana and release him after marijuana residue was found in the vehicle, because the discovery of marijuana residue provided probable cause to arrest defendant for possession of marijuana. Dupler's report states that he placed defendant in handcuffs and transported defendant to 1643 North Columbia Place, and defendant was effectively under arrest. This arrest was supported by probable cause, and defendant's Fourth Amendment rights were not violated by the traffic stop and subsequent arrest. Therefore, defense counsel did not provide ineffective assistance of counsel by failing to file a pretrial motion to suppress. Ground two of defendant's § 2255 motion is denied.

**C.**

Defendant argues in ground three that defense counsel failed to conduct an adequate investigation to prepare for trial. He claims that Atteberry provided deficient performance by failing

to interview witnesses, file pretrial motions, and obtain documents.[5]  Dkt. # 105, at 35-42.  The government responds that Atteberry's pretrial investigation was reasonable and, even if she did perform deficiently, defendant was not prejudiced.

Defendant's primary argument is that Atteberry failed to interview Durrell Collins, the person that defendant believes was the confidential informant mentioned by Mackenzie.  Defendant claims that he spoke to Collins after he was arrested, and Collins denied that he told Mackenzie that defendant was selling drugs.  Dkt. # 105, at 35.  Defendant asked his attorneys to interview Collins, and he alleges that his attorneys inexplicably failed to interview Collins.  Id. at 36.  He attempts to tie Collins' statements to the police corruption investigation, and he asserts that Tulsa police officers routinely manufactured the existence of confidential informants or misrepresented statements made by confidential informants.  Id.  Based on Collins' alleged statements to defendant, he claims that a reasonable attorney would have filed a motion to require the government to identify the confidential informant.  Id. at 37.  Atteberry states that she declined to interview Collins, because there was no basis to believe that Collins was actually the confidential informant referenced by Mackenzie.  Dkt. # 109-1, at 3.  Even if Collins was the confidential informant, Mackenzie started an investigation based on the confidential informant's tip, and the information gathered during this information provided a sufficient basis for police to search defendant's bedroom.  Id.  The Court agrees that a reasonable attorney would not have spent a substantial amount of time evaluating

---

[5]     Defendant also argues that Atteberry failed to seek evidence concerning police corruption.  Dkt. # 105, at 41-42. However, the Court has already determined that she sought such information and that the government was not in possession of evidence relevant to the police officers involved in this case.  See supra, at II.A.   The Court has reviewed defendant's motion and does not find that he is advancing a new argument related to the police corruption investigation in ground three of his § 2255 motion.

defendant's allegations concerning Collins' statements. Defendant has provided no evidence tending to corroborate his claims that Collins was the confidential informant or that Mackenzie engaged in misconduct related to the confidential informant. Even it is assumed that Collins was the confidential informant, the tip from the confidential informant may have triggered Mackenzie's investigation of defendant, but the tip essentially became irrelevant after the traffic stop of defendant's vehicle and the search of 1643 North Columbia Place. The affidavit for search warrant prepared on April 16, 2010 mentions that "Mackenzie received information that [defendant] was storing a large amount of cocaine" at the residence, but the affidavit relies on the traffic stop, the discovery of cocaine base in the garage, and defendant's own statements in seeking to establish probable cause to search the entire residence. Dkt. # 105, at 69. It would be a different matter if police had sought to obtain a search warrant based primarily on the tip from the confidential informant, and in such a case a reasonable attorney may have need to conduct further inquiry into defendant's allegations. However, this was not the case and defendant's unsupported allegations concerning the identity of the confidential informant did not merit further inquiry by defense counsel.

Defendant argues that defense counsel should have filed a pretrial motion to suppress challenging the existence of probable cause for the April 16, 2010 search warrant of 1643 North Columbia Place. Dkt. # 105, at 37-38. He claims that the affidavit for search warrant fails to include sufficient information about the reliability of the confidential informant, and he asserts that this is such an obvious deficiency that the good faith exception does not apply. Id. As the Court has already discussed, the information provided by the confidential informant may have triggered the investigation of defendant, but the tip was of minimal importance in establishing probable cause

when police sought a search warrant in order to enter defendant's bedroom. The affidavit for search warrant relies on information gathered during the traffic stop of defendant's vehicle, the consent search of 1643 North Columbia Place, and defendant's own statements that he was selling illegal drugs, and there was clearly probable cause for a search of the residence without additional information about the confidential informant. Defense counsel's decision not to file a motion to suppress challenging the validity of the April 16, 2010 search warrant was reasonable.

Defendant claims that he asked his attorneys to interview several witnesses, and he argues that defense counsel's failure to interview these witnesses shows that his attorneys conducted an inadequate pretrial investigation.[6] Id. at 39-40. Defendant claims that his attorneys failed to interview Braggs and Brandy Parks, and he believes that both of these witnesses could have provided exclupatory evidence. Id. at 39. However, Fatigante did interview Parks and he provided his notes of the interview to Atteberry, and Atteberry determined that it was unnecessary to interview Parks a second time. Dkt. # 109-1, at 4. Atteberry states that she interviewed Braggs and "he did not have much information to add outside the information provided in the police reports." Id. Defendant may believe that Parks and Braggs could have provided exculpatory information, but defense counsel interviewed these witness and were not obligated to spend their limited trial preparation time speaking to witnesses who had already been interviewed. See Harrington v. Richter, 562 U.S. 86, 89 (2011) ("Counsel is entitled to balance limited resources in accord with effective trial tactics and strategies."). Defendant also argues that Atteberry should have interviewed

---

[6]     Defendant renews his arguments concerning defense counsel's alleged failure to investigate his claims that Collins was the confidential informant referenced by Mackenzie. Dkt. # 105, at 39. The Court has already considered and rejected this argument, and defense counsel's pretrial investigation was not inadequate due to a failure to interview Collins.

Dupler, because he believes that Dupler engaged in misconduct and that Atteberry should have attempted to gather information that would helped in the drafting of a motion to suppress. Id. at 40. Atteberry states that she considered interviewing Dupler, but based on her experience Dupler typically refuses to speak to defense attorneys. Id. Defendant has not shown that defense counsel's preparation for trial was inadequate based on a failure to interview witnesses, and it is apparent that his attorneys did speak to witnesses identified by defendant and made an informed decision not to interview a police officer unlikely to speak to defense counsel.

Finally, defendant argues that defense counsel failed to obtain documentary evidence he requested, and this evidence included cell phone records and dash-cam videos of the traffic stop. Id. at 41. Defendant claims that he asked his attorney to obtain the cell phone records of Parks, Mackenzie, and Dupler, because this evidence would have shown that the traffic stop was unreasonably lenghty and provided a basis to file a motion to suppress. Id. He also argues that defense counsel should have obtained dash-cam videos and audio recordings from the traffic stop. Id. at 41. The Court will assume that defense counsel should have sought to obtain the evidence identified by defendant and will proceed directly to the prejudice prong of an ineffective assistance of counsel claim. United States v. Gonzalez, 596 F.3d 1228, 1233 (10th Cir. 2010) ("It is permissible for a reviewing court, if it so chooses, to proceed directly to the prejudice prong of the Strickland analysis."). Even if defendant has a valid argument concerning the length of the traffic stop, the government argues that Mackenzie searched 1643 North Columbia Place with the consent of Braggs and found cocaine base, and defendant could have been arrested even without the marijuana residue found in defendant's vehicle. The Court agrees that suppression of evidence seized from defendant's vehicle would not have changed the outcome of the case, because the

evidence gathered from 1643 North Columbia Place was independently obtained and this was the evidence used to convict defendant at trial. Defendant was not prejudiced by his attorneys' failure to obtain cell phone records or dash-cam videos. The Court can find no other arguments in ground three of defendant's § 2255 motion, and ground three is denied in its entirety.

**D.**

Defendant argues in ground four that Atteberry should have objected when he asked to represent himself at trial, and he claims that he did not knowingly and voluntarily waive his right to counsel. Dkt. # 105, at 42-45. He also claims in ground six that appellate counsel was deficient for failing to challenge the Court's decision to allow defendant to represent himself at trial. Id. at 47-48. The government responds that the Court conducted a thorough colloquy with defendant before allowing him to represent himself at trial, and defendant knowingly and voluntarily waived his right to counsel.

A criminal defendant has the right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution. However, a defendant has a constitutional right to proceed without counsel and conduct his own defense. Faretta v. California, 422 U.S. 806 (1975); United States v. DeShazer, 554 F.3d 1281, 1288-89 (10th Cir. 2009). The defendant must "clearly and unequivocally" state his intention to proceed without counsel in a timely manner, and the Court must determine if the defendant's waiver of his right to counsel is knowing, voluntary, and intelligent. United States v. Floyd, 81 F.3d 1517, 1527 (10th Cir. 1996); United States v. Treff, 924 F.2d 975 (10th Cir. 1991). "Ideally, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully

informed of the risk of proceeding *pro se*." United States v. Hughes, 191 F.3d 1317, 1323 (10th Cir. 1999). "However, there is '[n]o precise litany' of questions that must be asked of defendants who choose self-representation." United States v. Williamson, 859 F.3d 843, 862 (10th Cir. 2017).

Defendant appears to making two separate arguments in relation to his self-representation claim. Defendant argues that he did not voluntarily waive his right to counsel, because the court-appointed counsel, Atteberry, was unprepared for trial and he told the Court that he could not work with Atteberry. Dkt. # 105, at 44. He also argues that the Court conducted an inadequate colloquy when granting his request for self-representation, because the Court failed to advise defendant of possible defenses and he stated that he was unfamiliar with the Federal Rules of Evidence. Id. at 45.

Defendant's argument concerning the voluntariness of his decision to represent himself is meritless. Defendant is correct that it would be an involuntary waiver of his right to counsel if he was presented with a choice between self-representation and incompetent or unprepared counsel. Williamson, 859 F.3d at 862. He claims that Atteberry was unprepared for trial, because she failed to interview certain witnesses and gather evidence sought by defendant. However, the Court has determined that Atteberry made an informed decision as to the use of her limited time and resources. Atteberry also interviewed many of the witnesses identified by defendant and found that the witnesses did not possess relevant or helpful information. Throughout the case, defendant expressed dissatisfaction with the counsel appointed to represent him, and the Court appointed him three attorneys. When defendant attempted to terminate Atteberry's representation, the Court questioned Atteberry about her trial preparation and defendant's allegations that Atteberry had not fully investigated the case. Dkt. # 67, at 11-12; Dkt. # 68, at 13-14. The Court was satisfied at the time

that Atteberry was competent and prepared for trial, and defendant has made no allegations in his § 2255 motion that would alter the Court's prior belief that Atteberry was fully prepared to represent defendant at trial. Defendant voluntarily asserted his right to self-representation on November 5, 2010 and December 22, 2010, and defendant cannot now assert that his decision to represent himself at trial was involuntary.

Defendant also argues that the Court did not have an adequate colloquy with him before allowing him to represent himself at trial, because the Court did not advise him of possible defenses and he stated that he was unfamiliar with the Federal Rules of Evidence. Dkt. # 105, at 45. Defendant may also be arguing that he did not make a timely request for self-representation and that the Court should have denied his request to represent himself as untimely. Id. On November 5, 2010, defendant clearly stated that he intended to represent himself at trial and the Court initiated a colloquy with defendant to explain the consequences of that decision. Dkt. # 67, at 5. Defendant stated that he had represented himself in a prior criminal case, and the Court advised defendant of the charges against him in this case. Id. at 6. Atteberry notified the Court that the government would be filing an enhancement information, and defendant was on notice that count one would carry a mandatory life sentence once the enhancement information was filed. Id. at 7. Defendant stated that Atteberry was refusing to interview witnesses and that the Court was forcing him to represent himself. Id. at 11-13. The Court asked defendant a series of questions about his familiarity with the Federal Rules of Evidence and Federal Rules of Criminal Procedure, and he generally refused to answer the questions. Id. at 15. Defendant asked the Court to appoint another attorney to represent him, and the Court told defendant that he would not be appointed a new attorney. Id. at 16-17. The Court determined that defendant had not clearly and unequivocally

waived his right to counsel, and Atteberry remained as defense counsel after the November 5, 2010 hearing. Defendant appeared with Atteberry on the first day of trial, and he stated that he wished to represent himself at trial. Id. at 5. The Court inquired as to defendant's understanding of the charges against him and the ranges of punishment he would face if convicted. Id. at 6-7. Defendant clearly understood that he was facing a life sentence if convicted of count one. Id. Defendant stated that he was not familiar with the Federal Rules of Evidence or the Federal Rules of Criminal Procedure, and the Court advised him that the rules would not be relaxed if he represented himself. Id. at 9. The Court told defendant that he was facing serious charges and that a trained lawyer would provide a stronger defense, but he stated that he would not allow Atteberry to represent him at trial. Id. at 10-12. Defendant was presented with a choice of proceeding to trial with Atteberry as his attorney or representing himself at trial, and defendant chose to represent himself at trial. Id. at 13-14.

The Court initially notes that it is unclear whether defense counsel could be ineffective for failing to object when a defendant is permitted to represent himself, because a defendant has a constitutional right to self-representation. See Faretta v. California, 422 U.S. 806 (1975). For the purpose of this Opinion and Order, the Court will assume that defense counsel could object to an inadequate colloquy when a defendant has indicated that he wishes to represent himself. The Court has reviewed the transcript of the November 5, 2010 ex parte hearing and the trial transcript, and finds that defense counsel had no basis to object to the colloquy conducted with the defendant concerning his request to represent himself at trial. The Court initially held a colloquy with a defendant on November 5, 2010, and his request for self-representation was denied when he would not clearly and unequivocally waive his right to counsel. On December 22, 2010, defendant

appeared for the first day of trial and he clearly stated that he would be representing himself at trial. Dkt. # 68, at 3. This shows that defendant made a timely assertion of his right to represent himself, even though the Court deferred its decision on the issue to ensure that defendant's waiver of his right to counsel was clear and unequivocal. On two separate occasions the Court conducted a lengthy colloquy with defendant about the risks of representing himself at trial, and the Court advised defendant of the charges against him and the possible punishment as to each count. Defendant stated that he was unfamiliar with the Federal Rules of Evidence and the Federal Rules of Criminal Procedure, and he was advised that these rules would not be relaxed if he represented himself. The Court did not specifically inquire if defendant was aware of any defenses available to him. However, his conduct at trial shows that he understood the charges against him and any available defenses, and he was even acquitted of count two. The Court finds that trial counsel had no basis to object to the Court's colloquy of defendant after he asserted his right to self-representation, and defense counsel's performance was not deficient. Ground four of defendant's § 2255 motion is denied.

Based on this finding, the Court concludes that appellate counsel did not provide deficient performance by failing to raise this issue on direct appeal. In assessing the performance of appellate counsel, the Tenth Circuit has applied the same standard for ineffective assistance as applied to trial counsel. United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995). To the extent that defendant alleges certain arguments should have been raised on appeal, the Court must consider the merits of the omitted issue. Id.. "If the omitted issue is without merit, counsel's failure to raise it 'does not constitute constitutionally ineffective assistance of counsel.'" Id. Appellate counsel is not ineffective for failing to raise a futile argument. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th

Cir. 1999). Defendant was given a choice between self-representation and proceeding with Atteberry as his counsel, and the Court held two separate colloquies with defendant about the risks of self-representation. Defendant made a knowing and voluntary decision to represent himself at trial, and appellate counsel had no obligation to raise a meritless issue on direct appeal. Ground six[7] of defendant's § 2255 motion is denied.

**E.**

Defendant argues in ground five that Fatigante was ineffective for failing to request a hearing to seek information about the conflict of interest cited as the basis for O'Connell's withdrawal from the case. Dkt. # 105, at 46. The government responds that defendant was not prejudiced by O'Connell's withdrawal or Fatigante's failure to request a hearing after he was appointed to represent defendant. Dkt. # 109, at 39. Defendant states that he has written a letter to O'Connell and she has no information in her file that would clarify the basis of the conflict of interest that required her to withdraw from her representation of defendant. Dkt. # 105, at 46. He also admits that without this information that he will be unable to prove that O'Connell's withdrawal prejudiced him in any way. In any event, the Court finds that Fatigante did not provide deficient performance by failing to request a hearing following O'Connell's withdrawal. Defense counsel is not required to disclose to the defendant the nature of a conflict of interest when filing a motion to withdraw, and defendant has not shown that Fatigante would have learned anything material about defendant's case

---

[7]     Construing defendant's § 2255 motion broadly, he could be arguing that appellate counsel was ineffective for failing to raise the issues raised in grounds one through five of his § 2255 motion on direct appeal. Dkt. # 105, at 3. As stated earlier, defendant limited his argument of ground six to one issue (ground four). See note 2, supra. Nevertheless, the Court has found that the arguments raised in grounds one through five lack merit, and appellate counsel's failure to raise these issues on direct appeal does not constitute ineffective assistance of appellate counsel.

by inquiring into the basis for O'Connell's withdrawal. Ground five of defendant's § 2255 motion is denied.

**F.**

Defendant's final argument, ground seven, is that appellate counsel should have argued that the convictions used to enhance defendant's sentence under § 851 should have been presented to a jury. Dkt. # 105, at 48. Defendant cites Almendarez-Torres v. United States, 523 U.S. 224 (1998), in his brief, and he is clearly aware of Supreme Court precedent that any fact, other than the fact of a prior conviction, that increases a defendant's statutory maximum sentence must be presented to a jury. See Apprendi v. New Jersey, 520 U.S. 466, 490 (2000). This was the law at the time of defendant's conviction and it is still the law, and appellate counsel had no obligation to raise this argument on direct appeal. Ground seven of defendant's § 2255 motion is denied.

**G.**

The Court has considered each of the claims raised in defendant's § 2255 motion (Dkt. # 88) and finds that his motion should be denied in its entirety. Rule 11 of the Rules Governing Section 2255 Proceedings instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). After considering the record in this case, the Court concludes

that a certificate of appealability should not issue as defendant has not made a substantial showing of the denial of a constitutional right. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside or correct sentence (Dkt. # 88) is **denied**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that defendant's Motion to Compel Discovery (Dkt. # 106) is **moot**.

**DATED** this 16th day of January, 2018.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE